IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **THE KENJYA-TRUSANT GROUP, LLC**, <br><br> Plaintiff, <br><br> vs. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No.: 1:24-cv-2592 <br><br> Date: September 6, 2024 |

## COMPLAINT

Plaintiff The Kenjya-Trusant Group, LLC ("Plaintiff") brings this action against the United States for a refund of internal revenue taxes totaling $3,568,706.52 for 2021. Under Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281 (CARES Act) and section 3134 of the Internal Revenue Code (I.R.C.), Plaintiff is entitled to the Employee Retention Credits (ERC) described in this Complaint because Plaintiff meets the statute's significant-decline-in-gross-receipts test for the first, second and third quarters of 2021.

In support of this refund claim, Plaintiff alleges:

1

## I.   NATURE OF ACTION

1. This is an action for recovery of employment taxes, including the refundable excess credit (together with statutory interest and any appropriate attorney's fees) paid for 2021.

2. In March 2020, in response to the COVID-19 pandemic, Congress provided an employee retention credit for 50 percent of up to $10,000 per employee of qualified wages for the year. At the end of 2020, Congress extended and expanded the credit. Employers could now claim the credit for the first and second quarters of 2021; the credit was also increased to 70 percent of up to $10,000 per employee of qualified wages for each quarter. And Congress later made that same credit available for the third quarter of 2021.

3. One of the ways employers are eligible to claim this credit is by experiencing a significant decline in gross receipts (measured against a 2019 benchmark) during the last three quarters of 2020 or the first three quarters of 2021.

4. As detailed below, Plaintiff experienced the required significant decline in gross receipts for the quarters in which Plaintiff claimed the ERCs at issue here.

5. Yet the IRS has failed to pay Plaintiff's appropriately filed ERC claims.

## II.   PARTIES

6. Plaintiff is a Delaware limited liability company, taxed as a partnership, that contracts with the Federal Government to provide services such as Acquisition Management, Administrative and Technical Support, Cyber Security, Full Life-Cycle

IT Services, and Engineering and Construction Management Services. Plaintiff's principal place of business is in Columbia, Maryland.

7. The Defendant is the United States of America.

## III.   JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(1), and under 26 U.S.C. (I.R.C.) § 7422.

9. Venue in this Court is proper under 28 U.S.C. § 1402(a)(1).

10. This complaint is timely under I.R.C. §§ 6532 and 7422.

## IV.   LEGAL BACKGROUND

11. In March 2020, Congress passed the CARES Act, which created the employee retention credit (ERC). This credit is available to eligible employers for the last three quarters of 2020 and for the first three quarters of 2021.

12. Eligible employers are employers that carry on a trade or business or tax-exempt organizations that meet certain criteria. CARES Act § 2301(c)(2)(A)(i) & (C); I.R.C. § 3134(c)(2)(A)(i) & (C).[1]

### A. Refundability of the credit

13. The amount of ERC is not limited to the amount of employment taxes the employers paid, and against which the credit is applied. Rather, if the amount of the

---

[1] The current version of I.R.C. § 3134 became effective on November 15, 2021. As relevant here, it is identical to the prior version of I.R.C. § 3134 that was in effect from March 11, 2021, to November 14, 2021, and to the amended CARES Act in effect from January 1, 2021, to March 10, 2021. For ease of reference, this complaint cites I.R.C. § 3134 when discussing 2021 ERC requirements.

credit exceeds the applicable employment taxes for the calendar quarter, "such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." CARES Act § 2301(b)(3); I.R.C. § 3134(b)(3).

### B. Aggregation Rule

14. All entities that are members of a controlled group of corporations or trades or businesses under common control under IRC §§ 52(a) or (b), members of an affiliated service group under IRC § 414(m), or otherwise aggregated under IRC § 414(o) are treated as a single employer for purposes of applying the Employee Retention Credit. CARES Act § 2301(d); I.R.C. § 3134(d).

### C. Significant Decline in Gross Receipts

15. One way an employer can be an "eligible employer" and thus qualify for the ERC is by experiencing a significant decline in gross receipts. The significant-decline-in-gross-receipts test is an objective test. Generally, employers are eligible for the ERC based on a comparison of the gross receipts of the employer in the quarter in which the credit is claimed to the same quarter in 2019. Certain continuation and lookback rules also can apply, as detailed below.

16. For quarters in 2020, employers qualify for the ERC under the decline-in-gross-receipts test if their gross receipts for the quarter decreased by more than 50 percent compared to the corresponding quarter in 2019. CARES Act § 2301(c)(2)(B). *For example*, if an employer had $100,000 in gross receipts in the second quarter of

2019 and less than $50,000 in gross receipts in the second quarter of 2020, the employer is eligible to claim ERC for the second quarter of 2020.

17. After an employer becomes eligible to claim ERC based on a greater than 50 percent reduction in gross receipts for one quarter in 2020, the employer maintains that eligibility for the remainder of 2020 unless and until there is a quarter after a quarter in which the employer's gross receipts are more than 80 percent of the corresponding quarter in 2019. CARES Act § 2301(c)(2)(B). As IRS training materials explain,

> An employer is considered to have a significant decline in gross receipts for the period beginning with the first calendar quarter in 2020 for which its gross receipts are less than 50 percent of gross receipts from the same calendar quarter in 2019 and ending with the earlier of January 1, 2021, or the first calendar quarter after the quarter for which gross receipts are greater than 80 percent of gross receipts for the same calendar quarter in 2019.

*See* IRS ERC Training Guide 3-22 (Rev. 07/2022). In practical terms, this means that an employer that qualifies for the ERC based on a more than 50 percent reduction in gross receipts for the second quarter of 2020 is automatically eligible in the third quarter of 2020, and is eligible in the fourth quarter of 2020 so long as it had at least an 80 percent reduction in gross receipts in the third quarter of 2020 as compared to the third quarter of 2019. *For example*, an employer with gross receipts of 45 percent of the corresponding quarter in 2020 Q2, 85 percent of the corresponding quarter in 2020 Q3, and 75 percent of the corresponding quarter in 2020 Q4 would qualify for the ERC in 2020 Q3, but would not qualify for the ERC under the reduction-in-gross-receipts test in Q4. However, an employer with gross receipts of 45 percent of the corresponding quarter in 2020 Q2, 79 percent of the corresponding quarter in 2020

5

Q3, and 120 percent of the corresponding quarter in 2020 Q4 would qualify for the ERC in all three quarters.

18. For quarters in 2021, employers qualify for the ERC under the decline-in-gross-receipts test if their gross receipts for the quarter decreased by more than 20 percent compared to the corresponding quarter in 2019. I.R.C. § 3134(c)(2)(A). *For example*, if an employer had $100,000 in gross receipts in the second quarter of 2019 and less than $80,000 in gross receipts in the second quarter of 2021, the employer qualifies for the ERC for the second quarter of 2021.

19. For 2021, there is also an election rule that allows employers to elect to qualify for the ERC in any quarter based on a greater than 20 percent reduction of gross receipts in the immediately preceding quarter. I.R.C. § 3134(c)(2)(B). *For example*, suppose an employer has gross receipts of 79% of the corresponding quarter in 2020 Q4, 88% of the corresponding quarter in 2021 Q1, 78% of the corresponding quarter in 2021 Q2, and 138% of the corresponding quarter in 2021 Q3. This employer qualifies for the ERC in all three 2021 quarters:

- The employer qualifies in 2021 Q1 under the alternative quarter election rule based on the more-than-20% reduction in gross receipts in 2020 Q4;

- the employer qualifies in 2021 Q2 without election based on a more than 20% decline in gross receipts; and

- the employer qualifies in 2021 Q3 under the alternative election rule based on the more-than-20% reduction in gross receipts in 2021 Q2.

I.R.C. § 3134(c)(2)(A) & (B); IRS Notice 2021-49; see also [IRS ERC Training Guide 3-45](#).

### D. Full or Partial Suspension of Operations

20. A second way an employer can be an "eligible employer" and thus qualify for the ERC is by having its operations "fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." I.R.C. § 3134(c)(2)(A)(ii)(I); *see also* CARES Act § 2301(c)(2)(A)(i) (same).

21. According to IRS guidance, a business is partially suspended "if, under the facts and circumstances, more than a nominal portion of its business operations are suspended by a governmental order." IRS Notice 2021-20. The same notice provides, as a safe harbor, that

> a portion of an employer's business operations will be deemed to constitute more than a nominal portion of its business operations if either (i) the gross receipts from that portion of the business operations is not less than 10 percent of the total gross receipts (both determined using the gross receipts of the same calendar quarter in 2019), or (ii) the hours of service performed by employees in that portion of the business is not less than 10 percent of the total number of hours of service performed by all employees in the employer's business (both determined using the number of hours of service performed by employees in the same calendar quarter in 2019).

*Id.*

### E. Qualified Wages

22. To receive the ERC, an eligible employer must also pay "qualified wages." *See* CARES Act § 2301(c)(3); I.R.C. § 3134(c)(3).

23. Qualified wages are wages and compensation an eligible employer pays to some or all employees during the relevant period, including qualified health plan

7

expenses that are properly allocable to an employee. CARES Act § 2301(c)(3)(C) & (5); I.R.C. § 3141(c)(3)(ii) & (4).

24. For purposes of determining the average number of full-time employees, a full-time employee is an employee who, with respect to any month in 2019, had an average of at least 30 hours of service per week or 130 hours of service in the month. CARES Act § 2301(c)(3)(A)(i) (incorporating I.R.C. § 4980H); I.R.C. § 3134(c)(3)(A)(i) (same); IRS Notice 2021-49. Under IRS guidance, the average number of full-time employees is determined by taking the sum of the number of full-time employees in each calendar month during which the employer operated in 2019 and dividing that number by the number of months during which the employer operated in 2019. IRS Notice 2021-20, Answer 31; *see also* IRS ERC Training Guide 3-31.

25. For 2020, whether "some or all" wages are qualified wages depends on the size of the employer. For eligible employers that averaged 100 or fewer full-time employees in 2019, qualified wages include all wages paid to any employee during a calendar quarter in which there is a significant decline in gross receipts or the employer experienced a full or partial suspension of its operations. CARES Act § 2301(c)(3)(A)(ii).

26. For 2021, the rules for determining qualified wages are the same as for 2020 except that the question whether "some or all" wages are qualified wages depends on whether the employer averaged more or less than 500 full-time employees in 2019. I.R.C. § 3134(c)(3)(A).

## F. Amount of Credit

27. Employers who qualify for the ERC for 2020 may receive a credit of up to $5,000 per employee for the year; employers who qualify for the ERC for 2021 may receive a credit of up to $7,000 per employee for each quarter in which they qualify.

28. For 2020, the ERC is equivalent to 50% of the qualified wages that an eligible employer pays in any quarter. CARES Act § 2301(a). But the maximum per-employee qualified wages that can be taken into account in determining the credit for 2020 is $10,000 for the year. CARES Act § 2301(b)(1). Thus, an eligible employer that paid all of its employees at least $10,000 in qualified wages would be entitled to a $5,000 credit for the qualified wages it paid each of its employees. *For example*, an eligible employer that paid qualified wages of at least $10,000 to 95 employees in 2020 is entitled to an ERC for 2020 of $475,000.

29. For 2021, the ERC is equivalent to 70% of the qualified wages that an eligible employer pays in any quarter. I.R.C. § 3134(a). And the maximum per-employee qualified wages that can be taken into account in determining the credit for 2021 is $10,000 per quarter. I.R.C. § 3134(b)(1). Thus, an eligible employer that paid all of its employees at least $10,000 in qualified wages for each of the first three quarters of 2021 would be entitled to a $7,000 credit for the qualified wages it paid each of its employees in each of those quarters. *For example*, an eligible employer that paid qualified wages of at least $10,000 to 95 employees in each of the first three quarters of 2021 is entitled to an ERC for 2021 of $1,995,000.

30. In this case, Plaintiff is an eligible employer who paid qualified wages and suffered a significant decline in gross receipts such that Plaintiff was entitled to an

ERC. Yet to date, the Defendant has failed to pay the ERCs to which Plaintiff is entitled.

31. Plaintiff brings this suit to recover the ERCs wrongfully withheld by the Defendant.

## V.   CAUSES OF ACTION

### COUNT 1: REFUND FOR REDUCTION IN GROSS RECEIPTS

32. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

33. Plaintiff is entitled to a tax refund for ERCs under I.R.C. § 3134 based on a reduction in its gross receipts as set forth below.

### A. *Plaintiff is an eligible employer.*

34. Plaintiff is in the business of contracting with the Federal Government to provide various services including Acquisition Management, Administrative and Technical Support, Cyber Security, Full Life-Cycle IT Services, and Engineering and Construction Management Services. Thus, Plaintiff meets the initial eligible employer requirements of I.R.C. § 3134(c)(2)(A)(i).

35. The aggregation rules in CARES Act § 2301(d), I.R.C. § 3134(d), are inapplicable because Plaintiff is not a member of a controlled group of corporations or trades or businesses under common control under IRC §§ 52(a) or (b), or a member of an affiliated service group under IRC § 414(m), or otherwise aggregated under IRC § 414(o).

36. Plaintiff averaged fewer than 500 employees in 2019. *See* I.R.C. § 3134(c)(3)(A); IRS Notice 2021-20. Thus, all of the wages Plaintiff paid to its employees during the quarters at issue are qualified wages. *Id.*

### B. Plaintiff meets the significant-decline-in-gross-receipts test.

37. Plaintiff satisfies the statutory significant-decline-in-gross-receipts test for the first, second, and third quarters of 2021.

38. Based on Plaintiff's records, here are Plaintiff's gross receipts for the quarters relevant to Plaintiff's ERC claims based on the decline-in-gross-receipts test:

|  | **Q1** | **Q2** | **Q3** | **Q4** |
| --- | --- | --- | --- | --- |
| **2019** | $10,617,633.00 | $7,822,515.00 | $7,447,733.00 |  |
| **2020** |  |  |  |  |
| **2021** | $6,591,885.00 | $5,629,652.00 | $4,569,326.00 |  |

39. Plaintiff experienced the required decline in gross receipts for the first quarter of 2021 because its gross receipts for that quarter were less than 80% of its gross receipts for the first quarter of 2019. I.R.C. § 3134(c)(2)(A)(ii)(II).

40. Plaintiff experienced the required decline in gross receipts for the second quarter of 2021 because its gross receipts for that quarter were less than 80% of its gross receipts for the second quarter of 2019. I.R.C. § 3134(c)(2)(A)(ii)(II). Alternatively, Plaintiff experienced the required decline in gross receipts for the second quarter of 2021 because its gross receipts for the immediately preceding

calendar quarter were less than 80% of its gross receipts for the same calendar quarter in 2019. I.R.C. § 3134(c)(2)(B)(i).

41. Plaintiff experienced the required decline in gross receipts for the third quarter of 2021 because its gross receipts for that quarter were less than 80% of its gross receipts for the third quarter of 2019. I.R.C. § 3134(c)(2)(A)(ii)(II). Alternatively, Plaintiff experienced the required decline in gross receipts for the third quarter of 2021 because its gross receipts for the immediately preceding calendar quarter were less than 80% of its gross receipts for the same calendar quarter in 2019. I.R.C. § 3134(c)(2)(B)(i).

### C. *Plaintiff paid qualified wages.*

42. Plaintiff paid at least $10,000 in qualified wages to 183 employees during the first quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

43. Plaintiff paid less than $10,000 in qualified wages (amounts ranging from $9,201.93 to $180) to 9 other employees during the first quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

44. Plaintiff paid a total of $1,889,716.30 in wages that can be taken into account in determining the credit during the first quarter of 2021.

45. Plaintiff paid at least $10,000 in qualified wages to 167 employees during the second quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

46. Plaintiff paid less than $10,000 in qualified wages (amounts ranging from $9,560.86 to $2,942.22) to 16 other employees during the second quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

47. Plaintiff paid a total of $1,767,394.42 in wages that can be taken into account in determining the credit during the second quarter of 2021.

48. Plaintiff paid at least $10,000 in qualified wages to 131 employees during the third quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

49. Plaintiff paid less than $10,000 in qualified wages (amounts ranging from $9,336.98 to $1,282.50) to 19 other employees during the third quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

50. Plaintiff paid a total of $1,441,041.45 in wages that can be taken into account in determining the credit during the third quarter of 2021.

51. None of the wages described above include amounts taken into account as payroll costs for Paycheck Protection Program (PPP) loan forgiveness. Plaintiff did not receive PPP loan forgiveness.

52. The amounts included in the qualified wages described above also do not include wages taken into account for the COVID-19 related paid sick and family leave credits under sections 7001 and 7003 of the Families First Coronavirus Response Act, or wages taken into account for credits under I.R.C. §§ 41, 45A, 45P, 45S, 1396, 3131,

or 3132. Nor are the wages described above excluded from wages that may be included in qualified wages for any other reason.

53. In calculating qualified wages, Plaintiff determined each employee's gross wages during the relevant quarters (the quarters discussed above for which ERC claim(s) at issue in this lawsuit were made) including qualified health plan expenses.

### D. *Plaintiff has paid employment taxes and made a proper claim for refund.*

54. Plaintiff filed and paid employment taxes and later claimed the ERCs at issue here using the procedures the IRS designated for such claims.

55. Plaintiff – through TriNet, its professional employer organization (PEO) – timely filed and paid employment taxes for the quarters at issue, sending IRS Form 941 and the amounts owed for those employment taxes to the appropriate IRS Service Center.

56. Plaintiff also filed refund claims and claimed ERCs using IRS Form 941-X, which it sent – through its PEO – to the IRS Service Center in Cincinnati, Ohio, on or about January 31, 2024.

57. Pursuant to IRS instructions, Plaintiff's ERC claims were made on an aggregate 941-X filed by TriNet, with the amount of Plaintiff's ERCs specified on an attached schedule (Schedule R).

58. Plaintiff, not TriNet, is entitled, under I.R.C. § 3134, to the ERC credits at issue in this case.

59. The amount of refund to which Plaintiff is entitled is as follows:

| Q | Q1 | Q2 | Q3 |
|---|---|---|---|
| 2021 | $1,322,801.41 | $1,237,176.09 | $1,008,729.02 |

### *E. Defendant has failed to pay Plaintiff's valid ERC refund claim.*

60. Plaintiff filed its timely refund claims for ERCs totaling $3,568,706.52.

61. As established above, Plaintiff is legally entitled to that money, yet Defendant nonetheless has failed to process Plaintiff's ERC claims for more than 6 months.

62. Because Plaintiff has established entitlement to the ERCs at issue here, the United States should be compelled to pay the ERCs plus statutory interest to Plaintiff under I.R.C. § 7422.

63. Defendant must pay interest on the refund amount Defendant owes Plaintiff using the interest rate established under I.R.C. § 6621. *See* I.R.C. § 6611(a). This interest is owed "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Thus, Defendant owes interest from the dates on which Plaintiff paid the employment taxes against which the ERC is credited.

## VI.   JURY TRIAL DEMAND

64. Plaintiff demands a jury trial on all issue so triable.

## VII. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a judgment against Defendant, the United States of America, for:

(A) A tax refund of $3,568,706.52 for the ERCs at issue in this case and described above or such greater amount as is legally refundable plus statutory interest;

(B) Reasonable litigation and administrative costs, including attorneys' fees, as allowed by law; and

(C) All other further relief to which Plaintiff may be entitled.

Dated: September 6, 2024        Respectfully submitted:

/s/ *Nathaniel S. Pollock*

NATHANIEL S. POLLOCK (31196)
PAUL E. HAROLD
(*motion for pro hac vice forthcoming*)

SouthBank Legal
100 East Wayne Street, Suite 300
South Bend, IN 46615
Tel.: (574) 968-0760
Fax: (574) 968-0761
npollock@southbank.legal
pharold@southbank.legal

PETER HAUKEBO (18307)

Frost & Associates, LLC
839 Bestgate Road, suite 400
Annapolis, MD 21401
Peter.Haukebo@frostlaw.com

*Attorneys for Plaintiff*

16